Hillsborough-northern judicial district
No. 94-687

FLEET BANK — NH

v.

CHRISTY'S TABLE, INC. & a.

August 12, 1996

*McKenney & Perreault, P.C.*, of Amherst (*Robert V. McKenney* on the brief and orally), for the plaintiff.

*Leahy & Denault*, of Claremont (*Albert D. Leahy, Jr.* on the brief and orally), for defendants Robert V. and Bertha H. Ferland.

THAYER, J. Defendants Robert V. and Bertha H. Ferland appeal an order of the Superior Court (*Groff*, J.) holding them liable as guarantors on a loan made by the plaintiff, Fleet Bank — NH (Fleet), to codefendant Christy's Table. We affirm the superior court's ruling that the Ferlands are liable as guarantors but vacate and remand its award of attorney's fees.

The trial court found the following facts. In October 1989, Fleet entered into a commercial term note (the first loan) in the principal amount of $60,000 with Pamela Speck and Richard Shotwell for the purpose of purchasing a restaurant known as Christy's Table in Newport. In conjunction with this loan, the Ferlands, who are Speck's mother and stepfather, executed a written guaranty of payment dated the same day (the first guaranty), the validity of

which is not in dispute. Approximately one week later, Speck and Shotwell incorporated Christy's Table. As they remodeled and expanded the restaurant, Speck and Shotwell decided that they needed additional capital. In February 1990, Christy's Table, Inc., entered into a new commercial term note (the second loan) with Fleet in the amount of $69,500. The Ferlands did not participate in negotiations on this second loan. The obligation on the first loan was paid by renewal through the proceeds of the second loan.

Christy's Table, Inc., was listed as the maker on the second loan, for which Speck and Shotwell signed personal guaranties. In addition, a guaranty of payment (the second guaranty), dated the same day as the second loan and signed by the Ferlands, purported to guarantee credit extended by Fleet to Christy's Table, Inc. The corporation fell behind in its payments on the second loan after a few months and eventually defaulted. On December 12, 1991, Fleet notified the Ferlands by registered mail of the default and made a demand for payment in accordance with the terms of the second guaranty. The Ferlands did not pay, and in February 1992, Fleet brought this suit. One month later, Christy's Table, Inc. filed for bankruptcy, resulting in the discharge of its obligations to Fleet under the second loan.

In January 1993, the Superior Court (*Goode*, J.) denied Fleet's motion for summary judgment, finding a genuine issue of material fact as to whether the Ferlands intended to guarantee the second loan. Following a trial, the Superior Court (*Groff*, J.) ruled that the Ferlands were liable as guarantors. The court found that the Ferlands "knowingly executed the guaranty of the promissory note, with full knowledge of the consequences of their obligations thereunder." The Ferlands' motion to reconsider was denied, and this appeal followed.

The dispute in this case centers on whether the Ferlands guaranteed the second loan. The Ferlands do not deny that their signatures appear on the second guaranty, but they do deny that they knowingly signed this guaranty. Their argument is that Fleet has failed to meet its burden of establishing a "meeting of the minds" and that the trial court's implicit finding to the contrary was clearly erroneous.

■ Guaranties are governed by the general law of contracts. *See* 38 AM. JUR. 2D *Guaranty* § 1, at 995–96 (1996). "In order for a contract to be formed there must be a meeting of the minds as to the terms thereof." *Appeal of Sanborn Regional School Bd.*, 133 N.H. 513, 518, 579 A.2d 282, 284 (1990). The parties must have the same understanding of the terms of the contract and must manifest an

intention, supported by adequate consideration, to be bound by the contract. *Id.* Mere mental assent is not sufficient; a "meeting of the minds" requires that the agreement be manifest. *Blais v. Remillard*, 138 N.H. 608, 611, 643 A.2d 967, 969 (1994).

■ The question of whether a "meeting of the minds" occurred is a factual question to be determined by the trier of fact, provided there is some evidence on which to base such a finding. *See Tsiatsios v. Tsiatsios*, 140 N.H. 173, 177–78, 663 A.2d 1335, 1339 (1995). "This court will not disturb the decision of the trier of fact unless the findings are clearly erroneous." *Dimick v. Lewis*, 127 N.H. 141, 144, 497 A.2d 1221, 1223 (1985).

The Ferlands claim that the second guaranty is suspect because the purported witness to the Ferlands' signature was Fleet's branch manager, whereas the date and identity of the borrower were completed by Fleet's district branch supervisor. In addition, the branch manager, a public notary, began but failed to complete notarization of the document. In particular, the jurat is unsigned and the acknowledgement of appearance is blank. The Ferlands also place great weight on an internal bank document dated February 14, 1990, setting forth the terms and conditions of the second loan. This "loan offering" identifies the borrower as Christy's Table, Inc., and names the guarantors as Pamela Speck and Richard Shotwell, making no mention of the Ferlands. Finally, the Ferlands assert that Fleet's financing of the restaurant was in general "sloppy and unprofessional," from which we are presumably to infer that the second guaranty was so mishandled that no meeting of the minds could have occurred.

■ Although the Ferlands have demonstrated that their position at trial was not without support, we uphold the trial court's finding of a binding contract of guaranty because it is supported by the evidence and is not clearly erroneous. *See Cushing v. Thomson*, 118 N.H. 292, 295, 386 A.2d 805, 806 (1978). To begin with, the second guaranty supports the trial court's conclusion on its face: it is dated February 14, 1990, the same date as the second loan; the borrower is identified as Christy's Table, Inc.; the Ferlands' signatures are on the document; these signatures are witnessed by the branch manager; and the Ferlands do not dispute that the signatures are genuine. Although the Ferlands hint at the possibility that they signed a blank document that was later filled in by Fleet, testimony on this point was conflicting. The branch manager testified that she would not witness an incomplete document, and the district branch supervisor testified that he did not fill in the date and identity of the borrower after signing. Witness credibility is a finding of fact and

will not be overturned unless clearly erroneous or unsupported by the evidence. *Society Hill at Merrimack Condo. Assoc. v. Town of Merrimack*, 139 N.H. 253, 256, 651 A.2d 928, 930 (1994). The defendants have demonstrated no such error or lack of support.

In addition, the Ferlands acknowledged that they received a stream of correspondence from Fleet from December 1990 to December 1991 related to the loan to Christy's Table, Inc. Although letters dated February 6, 1991, and September 25, 1991, explicitly referred to the Ferlands as guarantors on the loan, the Ferlands did not deny or contest this status until after Fleet made a formal demand for payment on ·December 12, 1991. Also, an internal memorandum of Fleet, dated November 7, 1990, states that the loan was "guaranteed by Bertha and Robert Ferland" and that "Mrs. Ferland has proposed that she would be willing to continue guaranteeing the loan but will not encumber her primary residence." In short, the record is replete with evidence on which the trial court could have based its decision that Fleet and the Ferlands entered into a binding contract of guaranty. *See Cushing*, 118 N.H. at 295, 386 A.2d at 806.

■ The Ferlands also direct our attention to the trial court's granting of their requested finding of fact "[t]hat the 'guarantee' in question was not fully executed in that the Defendants' signatures are unacknowledged and there is no evidence as to when, where or if they ever appeared before either of the two bank employees whose handwriting appears on the document." The Ferlands argue that the trial court's ruling that they are liable on the guaranty is in "direct contradiction" with its finding that there is no evidence regarding the personal appearance of the Ferlands before Fleet's officers. We disagree. Even if this finding of fact is correct, there is no requirement in contract law that the parties personally appear before one another at signing. *Cf. Tsiatsios*, 140 N.H. at 178, 663 A.2d at 1339 (listing elements of contract, including concept that offer may be accepted by commencement of performance). We therefore cannot say that this finding of fact is inconsistent with the trial court's ultimate conclusion that the parties entered into a binding contract of guaranty. *See Beaudoin v. Beaudoin*, 118 N.H. 325, 328, 386 A.2d 1261, 1263 (1978) (trial court assumed to make subsidiary findings necessary to support its general ruling).

We have considered the Ferlands' remaining arguments contesting their liability as guarantors and find them unpersuasive. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

■ ■ The Ferlands also argue that the trial court abused its discretion insofar as it awarded attorney's fees to Fleet based solely

upon the terms of a contingency fee agreement entered into between Fleet and its attorneys for the instant collection action on the second loan. We agree. The Ferlands were not a party to the contract between Fleet and its attorneys and cannot be bound by its terms. Rather, the parties agree that the Ferlands are obligated by the second guaranty to pay only "reasonable attorney's fees." The fact that Fleet was willing to forego a certain percentage of any award obtained by its attorneys in a collection action is not dispositive of whether that percentage amount is "reasonable" within the meaning of the contract between Fleet and the Ferlands. We hold that a party seeking to enforce a general contract provision requiring the opposing party to pay attorney's fees must introduce "some evidence of the services performed, the time involved and the fee arrangement," *Gosselin v. Gosselin*, 136 N.H. 350, 353, 616 A.2d 1287, 1289 (1992), demonstrating that the amount claimed is reasonable.

In this case, a Fleet vice-president testified that Fleet agreed to a thirty-percent contingency fee arrangement, paid a nonrefundable suit fee of $1250, and accrued unspecified costs of $884.70 in pursuing this lawsuit. With the exception of the $1250 suit fee, Fleet introduced no evidence tending to prove that the amount of fees it sought was reasonable. *See id.* We hold that it was an abuse of discretion not to require such evidence. Accordingly, we vacate and remand for redetermination of the trial court's award of attorney's fees.

■  Fleet argues that collection actions present a special case justifying a presumption that contingency agreements are reasonable. Fleet points out that much of the attorney's work occurs post-judgment in efforts to enforce the judgment, and that awards of attorney's fees based on hours worked at the time of judgment do not anticipate hours remaining to be worked. We agree with Fleet that contingency fee arrangements are not *per se* unreasonable and may be imposed on a third party pursuant to an agreement to pay reasonable attorney's fees when adequately supported by the evidence. *Cf. McCabe v. Arcidy*, 138 N.H. 20, 29–30, 635 A.2d 446, 452–53 (1993) (no "rigid, precise measure" for determining reasonableness of attorney's fees; calculation based on hourly rates not the sole method). In determining reasonableness, the trial court may consider whether the contingency fee is reasonably related to the total amount of work, both before and after judgment, likely to be required of the attorney. *See id.* at 29, 635 A.2d at 452.

Fleet also contends that the Ferlands failed to preserve the issue of attorney's fees by failing to raise this issue through direct

testimony at trial or through a request for findings of fact and rulings of law. The burden of proving the reasonableness of the attorney's fees was on Fleet, not the Ferlands. *See id.* at 30, 635 A.2d at 452. The Ferlands were under no obligation at trial to correct Fleet's failure to introduce sufficient evidence to support its request. By including this issue in their motion for reconsideration, notice of appeal, and briefs, the Ferlands properly preserved it for appeal.

*Affirmed in part; vacated in part; remanded.*

HORTON and BRODERICK, JJ., did not sit; the others concurred.